Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 3402 | DATE | 8/7/2001 |
| CASE TITLE | Morton International, Inc. etal vs. Sequa Corporation | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: It is ordered that Sequa's motion to dismiss is granted and all of the counts of the complaint are dismissed with prejudice. [3-1]

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 8 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | 16 |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING | | |
| | Copy to judge/magistrate judge. | 01 AUG -7 AM 10: 07 | 8/7/2001 date mailed notice | |
| AMM courtroom deputy's initials | | Date/time received in central Clerk's Office | AMM mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MORTON INTERNATIONAL, INC., as
assignee of MORTON BUILDINGS,
INC., an Illinois corporation,

        Plaintiff,

v.

SEQUA CORPORATION, a Delaware
corporation,

        Defendant.

Case No. 01 C 3402

Judge Harry D. Leinenweber



## MEMORANDUM OPINION AND ORDER

Morton International, Inc. ("International"), assignee of Morton Buildings, Inc. ("Buildings"), has brought suit against the defendant, SEQUA Corporation ("Sequa"), for breach of contract (expressed as breach of express warranty, breach of implied warranty, breach of contract implied in law, breach of contract implied in fact), and for negligent spoliation of evidence. Sequa has brought a Motion to Dismiss pursuant to Rule 12(b)(6). The gist of the motion is that there was no contractual relationship between Sequa and Buildings so none of International's theories of recovery are valid or, in the alternative, none of International's contract rights, if it has any, are enforceable.

## BACKGROUND

The facts according to the complaint, which for purposes of this motion are accepted as true, are as follows.

Between 1984 and 1995, Buildings manufactured and sold metal building systems made with pre coated steel coils known as coated coil stock, which it purchased from various steel companies. It was the custom and practice for steel companies, who manufacture these steel coils, to contract out to companies such as Sequa to have the steel coils coated according to the specifications of the intended purchaser. It was also the custom and practice for the purchaser to specify a particular coil coater to do the coating work. Steel companies ship the untreated steel coils to a specified coater, who applies the specified coating system, and then the coater ships the finished product to the purchaser. The purchaser pays the steel manufacturer the total cost of the coated coil stock, while the coater is paid by the steel manufacturer for the coating services. Because there were several competing coating businesses, the coaters marketed their services directly with the coil stock purchasers in hope of being specified as designated coaters.

From 1984 through 1995, Buildings on many occasions specified Sequa as coater and specified a particular coating manufactured by International known as Plasticol XL Coating System for the coating. After receiving an order for coating from a steel manufacturer, Sequa would clean and pre-treat the steel coils and apply the Plasticol. Sequa, after coating the steel coils, would then ship the coils directly to Buildings. Sequa was paid for its coating

services by the steel manufacturer who sold the steel coils to Buildings.

At some later time, the complaint does not say when, delamination of the Plasticol manufactured by International and applied by Sequa, occurred on certain metal structures manufactured by Buildings. Buildings, which warranted against such delamination, was forced to repair its products at a cost of approximately $9.5 millions. Morton Buildings sued Morton International, but not Sequa, to recover these repair costs. This lawsuit was settled and, as part of the settlement, International received an assignment from Buildings of any claims that Buildings might have against Sequa. This suit was then filed by International, as Buildings' assignee, against Sequa in state court on December 29, 2000. The case was subsequently removed to federal court.

Sequa sent a letter to Buildings on November 21, 1984 in which it described what Sequa claimed was its "standard position that [it would] assume on damage on premature failure of a finish system [it applied]." The letter stated further that:

> [w]hen an exposed finish system under complaint or claim demonstrates reasonably clear evidence of film deficiency, improper pretreatment or other shortcoming attributed exclusively to processing within our control, our policy has been and will continue to be assumption of liability for restoration of the failed product.

This was described as defendant's "philosophy and practice in field complaints and claims."

With regard to International's negligent spoliation of evidence claim against Sequa, it contends that Sequa violated the custom and practice of keeping certain clippings from production runs, called "retain panels," for the purpose of analysis in the event of delamination. Specifically the complaint alleges that International wrote Sequa on July 14, 1999, requesting it to produce specific retain panels. However, although Sequa apparently produced those requested on July 14, 1999, it lost or destroyed certain other retain panels.

## DISCUSSION

Sequa argues that International's complaint fails to state any viable contractual theory because there was no contractual relationship between Buildings and Sequa. In addition Sequa argues that the claims are barred by the statute of limitations and the Illinois Statute of Frauds, and, because it has no viable substantive theory of recovery, it cannot maintain a claim for negligent spoliation of evidence.

A Contract to be valid of course must contain an offer, acceptance, and consideration, and, to be enforceable, it must be sufficiently definite so that the terms are reasonable certain and able to be determined. *Halloran v. Dickerson*, 223 Ill Dec. 323, 331 (5th Dist. 1997). To be sufficiently definite and certain a

court must be able to ascertain from its terms and provisions the parties' intentions. An alleged agreement is indefinite and uncertain if there is no basis for deciding whether the agreement has been kept or broken. *Id.*

With respect to the existence of a contract the complaint alleges the following. The custom and practice of purchasers of coil coated steel is to specify to the steel manufacturers the coil coater they are to use. As a result coil coaters market their services directly to the purchasers of coiled steel. Sequa, to induce Morton to designate it as the coil coater, furnished Buildings a letter advising it of Sequa's policy in the event of defects in the application of the coating. Based on the promises contained in the letter Buildings designated Sequa as coil coater. As a result of such designation the steel manufacturer gave Sequa the contract to apply the coating. Therefore the complaint alleges an offer by Sequa (to accept responsibility for faulty application of coatings if Sequa was designated by Buildings as coil coater), acceptance of the offer by Buildings by designating Sequa to be the coil coater), and consideration (receipt by Sequa of the coil coating contract from the steel manufacturer). Thus, the complaint adequately alleges a contract. International contends that the promises in the letter constitute a warranty. However the alleged agreement seems to be more in the nature of a service contract than a warranty. *See Griffin Systems, Inc. v. Washburn*, 106 Ill. Dec.

330, 333 (1st Dis. 1987). According to *Griffin*, a service contract is an agreement to repair or replace regardless of who manufactured or sold the product, while a warranty is an agreement by the seller to repair or replace its own defective product. Whatever its name the arrangement alleged in the complaint amounts to a contract, because of course a warranty is a contract. The contract alleged in the complaint appears to be reasonably definite for the court to interpret the intentions of the parties. Buildings must show that it selected Sequa because of its promises to repair, that Sequa got the coil coating contract as a result of its designation, and premature failure occurred because the finish was marginal or substandard in physical properties, or produced "reasonably clear evidence" that the system shows "film deficiency, improper pretreatment or other shortcoming attributed exclusively to processing within [Sequa's] control." If it can do so Sequa promised to assume liability for damage resulting exclusively from its work deficiency and share responsibility where there is no clear determination of fault.

Since the complaint alleges the existence of a contract, it must now be determined whether the contract is enforceable. Sequa says it is not because of the Illinois Statute of limitations and the Statute of Frauds. Sequa initially argues that the four-year statute under the Illinois UCC applies. *810 ILCS 5/2-725*. However as Morton points out this agreement is one for services, *i.e.*,

defendant's promise to repair its defective workmanship. Consequently the UCC does not apply to this contract. Sequa next argues that the 5-year statute of limitations applies because the contract is unwritten. *735 ILCS 5/13-205*. International in turn argues that the 10-year limitation period of 735 ILCS 5/13-206 applies because the letter of November 21, 1984, is a writing.

Illinois courts strictly interpret the meaning of the term "written contract" within the statute of limitations. A contract to be considered written must contain all essential terms. If parol evidence is necessary to make the contract complete, then the contract is considered oral. *Armstrong v. Guigler*, 220 Ill. Dec. 378, 382 (1996); *Toth v. Mansell*, 152 Ill. Dec. 853, 856 (1st Dist. 1990). Here as International itself concedes, the contract in large part is based on an alleged custom and practice of designating coil coaters, which will have to be established by parol evidence. The November 21 letter, upon which International relies, speaks only of Sequa's philosophy or policy with respect to responsibility for its defective work and does not describe any relationship between Sequa and Buildings. The promise to repair as far as the letter is concerned could just as well be limited to coating services performed by Sequa directly for Buildings. Thus the alleged "writing" contains a promise by Sequa to pay for repairs necessitated by its defective coating work but does not describe any corresponding undertaking by Buildings or any

consideration for Sequa's promise. Supplying these deficiencies will require parol evidence. Thus the contract is oral within the meaning of the statute of limitations and the 5-year statute of limitation of 5/13-295 applies.

Since the sale and delivery of the coils, alleged to have defective coating, according to the complaint occurred between 1988 and 1991, the statute of limitations bars enforcement unless, as claimed by International, the so-called discovery rule saves it. The discovery rule according to Illinois courts delays the onset of the limitation period until a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused and the discovery rule applies to oral contracts. *Hermitage Corp. v. Contractors Adjustment Co.*, 209 Ill. Dec. 684, 691 (1995). If a complaint on its face appears to be susceptible to a statute of limitations defense and if a defendant raises the defense on a motion to dismiss, the plaintiff must plead facts sufficient to invoke the discovery rule to avoid dismissal. *Hermitage* at 690. International filed this case in state court on December 29, 2000, therefore a discovery earlier than December 29, 1995, would lead to dismissal. As noted above, the complaint is silent as to the date of discovery, and the Morton Buildings complaint against Morton International, which is an exhibit, pleads in Paragraph 9 that:

> delamination and related failures began to appear on many structures upon which the warranted Polyceram Plasticol XL Coating System had been utilized. During 1996, after

> numerous discussions the parties began to
> recognize how vast the delamination failures
> were likely to become . . ..

The complaint also attaches as an exhibit a letter dated September 18, 1996 from Buildings to International confirming that those parties had arrived at a settlement procedure for splitting the repair costs for the defective lamination. So certainly the discovery would have occurred prior to that date and based on normal litigation timetables, there is a strong inference that discovery occurred prior to December 29, 1995.

As stated in *Hermitage*, Illinois law requires a party to plead facts sufficient to avoid application of the statute of limitations. If it does so a question of fact will be created sufficient to defeat a motion to dismiss. *Kuklick v. Julius Schmid, Inc.*, 120 Ill. Dec. 297, 304 (1st Dist. 1988). International has failed to plead a date on which the defective lamination was discovered so according to *Hermitage* and *Kuklick* the complaint must be dismissed because the defective coated coil stock was purchased by Buildings during the years 1988 and 1995, are outside the 5-year limitation period for unwritten contracts.

While the failure to plead a discovery date can be remedied by amending the complaint, such amendment may be futile if the second road block raised by Sequa, the Statute of Fraud, applies to prevent enforcement of International's claim. Sequa contends that, since the alleged agreement could not be performed within one year

and since it is oral, it runs afoul of the Illinois Statute of Limitations. *See 740 ILCS 80-1.* International, on the other hand, claims that the contract could be performed within one year and the November 21, 1988 letter is a sufficient writing to avoid the Statute of Frauds. Its position, that the contract could be performed within one year, is based on the supposition that Buildings might have stopped specifying Sequa as its coil coater before one year had passed so that the contract would have been performed within one year. A similar argument, however, was raised and disposed of in *Fischer v. First Chicago Capital Markets, Inc.*, 195 F.3d 279, 283 (7th Cir. 1999). In *Fischer* the plaintiff was promised an annual consulting fee for the duration of two bond issues which were to last for 20 and 27 years respectively. Plaintiff argued that defendant could have paid him during the first year the present value of what he would have earned over the life of the two bond issues so that the oral contract could have been performed within the one year. The Court stated, however, that this argument solved only "half the problem because regardless of whether the defendant could perform within the year, the plaintiff could not." He was obligated to perform the consulting services for the life of the bond issues. Likewise, Buildings certainly could have ceased specifying Sequa after 12 months but Sequa could not have performed its obligations within that year because there no time limit was specified in the letter which would

terminate defendant's obligations to compensate for defective coating.

The next issue raised by International is whether the November 21, 1988 letter is a sufficient writing to satisfy the Statute of Frauds. To satisfy the statute of frauds the writing must set forth all of the terms of the agreement. *Mid-Town Petroleum, Inc. v. Dine*, 28 Ill. Dec. 261, 267 (1st Dist. 1979). This is the same requirement for the statute of limitations. *Brown v. Goodman*, 101 Ill. Dec. 530, 532 (1st Dist. 1986); *Toth*, at 856; *Armstrong* at 382. However, these cases do make one distinction between the requirements of the two statutes. To satisfy the statute of frauds a term or terms can be supplied by a separate writing and, presumably, parol evidence can be introduced to explain the connection between the separate writings. Separate writings cannot be used to supply absent terms to satisfy the ten-year statute of limitations however. *Brown* at 533. Here as shown in the discussion on the statute of limitations, the writing relied upon by International does not reference any obligation on the part of Buildings nor any consideration for Sequa's promise. International fails to allege the existence of any other writing that could supply these deficiencies. It is clear therefore that the contract cannot be completed within one year and the November 21, 1988 letter does not satisfy the statute of frauds as a writing. Thus, the contract counts must also be dismissed as

violating the statute of frauds. This makes an amendment to allege a date of discovery by Buildings futile. Sequa also points out that the November 21, 1988 letter is unsigned. International seeks discovery to see if there is a signed copy in Sequa's files. The court, however, assumed for purposes of these discussions that the letter was signed so discovery is unnecessary on this point.

With regard to the negligent spoliation of evidence claim, the parties agree that if the contractual claims fail, the spoliation claim fails, because like any tort the complaint must allege damage and proximate causation. If there is no cause of action due to the statute of limitations or the statute of frauds, loss of evidence will cause no damages. Consequently, this negligent spoliation count must also be dismissed.

### CONCLUSION

For the foregoing reasons, Sequa's Motion to Dismiss is granted and all of the counts of the complaint are dismissed with prejudice.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: AUG - 7 2001.